UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————x
RICHARD ANTIPORDA,

                Plaintiff,                Docket No. 25 cv 6371

  -against-                       **COMPLAINT AND**
                                           **JURY DEMAND**

VERSACE USA, INC.,

                Defendant.
——————————————————————————x

Plaintiff, RICHARD ANTIPORDA, by his undersigned counsel, alleges as follows against Defendant Versace USA, Inc.:

## NATURE OF THE ACTION

1. This is action for disability discrimination, failure to accommodate, and interference with, and retaliation for use of, protected leave arising out of Defendant's treatment of Plaintiff after he suffered a serious back injury and requested reasonable accommodations and protected leave.

2. Defendants' actions have violated the Plaintiff's rights under the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA") and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA").

## IDENTITY OF THE PARTIES

3. Plaintiff Richard Antiporda is a Manager of Retail Operations for Versace USA Inc.

4. Defendant Versace USA Inc., is a New York domestic business corporation and maintains its principal office at 11 West 42nd Street in the City, County, and State of New York.

5. Defendant is an "employer" within the meaning of the Americans with Disabilities Act, as Defendant employers more than fifteen (15) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

8. Plaintiff demands a trial by jury in this action.

## STATEMENT OF FACTS

9. Plaintiff began his employment with Defendant on October 3, 2022.

10. Plaintiff's title was Manager, Retail Operations for Versace.

11. Plaintiff oversaw retail operations in the United States, Canada, and Puerto Rico.

12. Plaintiff was in charge of all 47 Versace locations in North America.

13. Plaintiff excelled in his position.

14. Plaintiff was officially assigned as an employee of the New York City Office while living in another state.

15. Plaintiff received positive reviews from his supervisor, Rachelle Blume.

16. Ms. Blume was the Vice President of Retail for Defendant.

17. On or about June 1, 2023, Plaintiff's role was shifted entirely remote.

18. Plaintiff's performance was rated as exceeding expectations in the performance review he received immediately prior to his January 2024 injury.

19. Plaintiff's job caused significant wear and tear on his back due to repeated lifting of heavy objects while visiting stores.

20. On January 8, 2024, while moving merchandise in a retail store, Plaintiff felt sharp pains in his back.

21. The pain in his back continued to get worse over time.

22. Plaintiff decided to seek medical intervention.

23. Plaintiff sought treatment at Vanderbilt Orthopaedics in Franklin Tennessee.

24. His injuries included, but were not limited to, a herniated disk at L4-L5 with bulging in the disc.

25. This injury exacerbated previous on-the-job injuries he received while working for Defendant.

26. This injury substantially limited Plaintiff from performing major life activities such as sitting, standing, lifting, reaching, and twisting.

27. On or about January 18, 2024, Plaintiff sent a letter from Vanderbilt Orthopaedics to Defendant.

28. The letter indicated that Plaintiff was treating at their facility and that he should be assigned to light duty and is restricted from lifting greater than 15 pounds and should refrain from excessive bending or twisting.

29. The letter further indicated that he will undergo further evaluation in the coming weeks and they will re-evaluate his work status at that time.

30. This request constituted protected activity under the ADA.

31. Upon information and belief, Defendant received the letter on January 19, 2024.

32. Plaintiff stayed home from work to heal.

33. On January 24, 2024, approximately five (5) days after receiving the note, Defendant received a phone call from Tyler March.

34. Mr. March was hired by Defendant as the Vice President of Retail after Ms. Blume left Defendant's employ.

35. In the phone call on January 24, 2024, Mr. March revoked Plaintiff's work from home status requiring him to return to the office in New York City four (4) days a week.

36. Plaintiff was told that as a "courtesy" he would be given the month of February to relocate.

37. Plaintiff's loss of the ability to work remotely harmed an identifiable term and condition of his employment.

38. Plaintiff requested that he be provided with a job description that reflected the new requirements of in-office days and reflected the expected frequency with which he would have to travel.

39. Reporting to the office in New York City four (4) days a weeks was not consistent with the expectation that he frequently travel to new and existing retail stores.

40. On January 26, 2024, Plaintiff was informed by Mr. March that the company was limiting travel expectations and that corporate teams would be in office Monday - Thursday with work from home Friday.

41. Plaintiff was told that the return to office was required of all corporate employees.

42. Plaintiff later learned that this was not true.

43. Plaintiff's physical condition continued to deteriorate and his doctors initially advised that he take a three week lave to absence to care for himself on February 1, 2024.

44. Plaintiff provided supporting documentation from his doctors.

45. Defendant initially granted him this leave classifying it as pursuant to the Family Medical and Leave Act as well as worker compensation leave of absence.

46. Plaintiff's request for leave is a protected activity under the ADA and the FMLA.

47. On February 21, 2024, Tyler March informed Plaintiff that his managerial territory was being reduced from all of North America to only stores on the East Coast.

48. This represented a substantial decrease in his job duties and responsibilities.

49. Plaintiff again requested an updated job description.

50. Despite asking multiple times, Plaintiff has not received an updated job description.

51. Plaintiff's loss of significant territory harmed an identifiable term and condition of his employment.

52. In April of 2024, Jamie Green was hired as the Manager, Retail Operations responsible for the West Coast stores that were removed from Plaintiff in February.

53. On or about May 22, 2024, Plaintiff underwent surgery receiving a discectomy at his L4-L5 discs.

54. Mr. Green, who overtook Plaintiff's job duties and responsibilities over West Coast stores, is a corporate employee, is not disabled, and is not subject to the New York City return to office requirement.

55. Shauna Slavin, also a corporate employee, is the director of stores of the East Coast and is also not subject to the New York City return to office requirement.

56. Plaintiff returned to work on October 14, 2024.

57. Plaintiff is currently receiving accommodations of being able to work remotely, being limited to working 20 hours a week, and must be able to change positions every two (2) hours.

58. Plaintiff is able to complete all the essential functions of his position with accommodations.

59. Plaintiff's May 29, 2025, Performance Review, found that Plaintiff is meeting all expectations for his position.

60. Plaintiff has suffered differential treatment because of his disabilities.

61. Plaintiff has suffered differential treatment because he requested accommodations.

62. After Plaintiff was put on a reduced hour schedule, his superiors began treating him differently than his counterpart, Mr. Green.

63. Plaintiff has been left off communications that are necessary and relevant to his position.

64. Mr. Green was included on these communications.

65. For example, on May 29. 2025, Adnan Rangilla, North America VP of Finance for Defendant, sent an email containing an excel document reflecting the 2023, 2024, and 2025 inventory results for all US stores to Mr. Green and not to Plaintiff.

66. This document included inventory results and staff disciplinary actions that were relevant and necessary to both Mr. Green and Plaintiff's job.

67. Plaintiff's concern that he was being denied necessary work information and opportunities was confirmed in a meeting that took place on July 16, 2025.

68. This meeting took place on Zoom.

69. Plaintiff attended this meeting along with Mr. Green, Mr. Rangilla, and seven (7) other employees of Defendant.

70. In This meeting, Mr. Rangilla commented that Mr. Green that he is the only "Ops person" at the company.

71. Both Mr. Green and Plaintiff are considered "Ops" personnel.

72. Mr. Green, as identified above, has the exact same job duties and responsibilities as Plaintiff only he covers a different territory.

73. Mr. Rangilla's complete dismissal of Plaintiff typified the treatment of Plaintiff since he notified Defendant of his disabilities and requested accommodations from Defendant.

74. Plaintiff filed an EEO complaint concerning his treatment on July 31, 2025.

## EEOC CHARGE

75. On November 15, 2024, Plaintiff filed a charge with the Equal Employment Opportunity Commission.

76. The EEOC issued a notice of right to sue on July 23, 2025.

## DAMAGES

77. As a direct and proximate result of Defendant's discriminatory and retaliatory actions in violation of the ADA and retaliatory actions in violation of the FMLA, plaintiff has suffered and continues to suffer significant damages.

78. Plaintiff has suffered severe emotional distress, including but not limited to to anxiety, depression, humiliation, loss of self-esteem, and loss of enjoyment of life as a direct result of Defendant's unlawful conduct.

79. Plaintiff has suffered damage to his professional reputation due to the loss of job duties and responsibilities, which has negatively impacted Plaintiff's standing among colleagues and in his professional field.

80. The loss of job duties and responsibilities has caused Plaintiff to suffer diminished career advancement opportunities and potential future earnings.

81. Plaintiff is entitled to compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. 42 U.S.C.S. § § 1981(a) and (b).

82. Defendant's discriminatory and retaliatory conduct was undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.  42 U.S.C.S. § § 1981(a) and (b)

83. Plaintiff is entitled to the equitable relief of, including but not limited to, the restoration of his job duties and responsibilities. 42 U.S.C.S. § 12117 and 29 U.S.C.S. § 2617(a)(1)(B)

84. Plaintiff is entitled to reasonable attorney's fees and costs.   42 U.S.C.S. § 12205 and 29 U.S.C.S. § 2617(a)(3).

## COUNT ONE

### ADA Discrimination
### (Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq*.)

85. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 84 as if fully set forth herein.

86. Defendant is an "employer" within the meaning of the Americans with Disabilities Act, as Defendant employers more than fifteen (15) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

87. Plaintiff is a qualified individual.

88. The Defendant violated the prohibition against discriminating against a qualified individual on the basis of disability with regard to terms, conditions, and privileges of employment as set forth in 42 U.S.C. § 12112(a).

89. Defendant's removal of Plaintiff's remote work less than a week after he engaged in protected activity evidences a discriminatory motivation.

90. The remote work is an identifiable term, condition, or privilege of employment.

91. Allowing other, non-disabled employees to continue to work remotely undermines Defendant's contention that all corporate employees were ordered to return to the NYC office four days a week.

92. The Plaintiff's managerial territory covering all of North America is an identifiable term, condition, or privilege of employment.

93. Defendant's removal of Plaintiff's territory within two months after his first protected activity and approximately 20 days after a second protected activity evidences a discriminatory motivation.

94. Defendant hired a non-disabled employee to perform the job duties and responsibilities that were removed from Plaintiff.

## COUNT TWO

## ADA Retaliation
### (Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*)

95. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 94 as if fully set forth herein.

96. It is a violation of the ADA for an employer "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of…any right granted or protected by this chapter." 42 U.S.C.S. § 12203(b).

97. Defendant's removal of Plaintiff's remote work less than a week after he engaged in protected activity evidences a retaliatory motivation.

98. The remote work is an identifiable term, condition, or privilege of employment.

99. Allowing other, non-disable employees to continue to work remotely undermines Defendant's pre textual excuse that all corporate employees were ordered to return to the NYC office four days a week.

100. Removing an identifiable term, condition, or privilege of employment within a week of a protected activity is likely to dissuade a reasonable employee from engaging in the protected activity.

101. The Plaintiff's managerial territory covering all of North America is an identifiable term, condition, or privilege of employment.

102. Defendant's removal of Plaintiff's territory within two months after his first protected activity and approximately twenty (20) days after a second protected activity evidences a retaliatory motivation.

103. Defendant hired a non-disabled employee to perform the job duties and responsibilities that were removed from Plaintiff.

104. Removing Plaintiff's managerial territory within approximately twenty (20) days after engaging in a protected activity is likely to dissuade a reasonable employee from engaging in the protected activity.

## COUNT THREE

## FMLA RETALIATION
### (Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*)

105. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 104 as if fully set forth herein.

106. During the 12-month period immediately preceding Plaintiff's request for leave, Plaintiff worked at least 1,250 hours for Defendant.

107. Defendant is engaged in commerce and employs more than 50 employees for each working day during each of 20 or more calendar workweeks in the current and preceding calendar year.

108. Plaintiff is a qualified individual under FMLA.

109. Plaintiff was entitled to be restored to the position of employment held by Plaintiff under the same terms and conditions of employment.  29 U.S.C.S. §§ 2614 (a)(1)(A) and (B).

110. The Plaintiff's managerial territory covering all of North America is an identifiable term, condition, or privilege of employment.

111. While on FMLA leave, Defendant removed half of Plaintiff's managerial territory and hired a new employee for that position that was outside of Plaintiff's protected category.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RICHARD ANTIPORDA respectfully requests that this Court enter judgment in his favor and against Defendants NYU VERSACE USA, INC. ("Defendant"), granting the following relief:

(a) A declaratory judgment that the acts, policies, practices, and conduct of Defendants complained of herein violated Plaintiff's rights under the Americans with Disabilities Act and the Family and Medical Leave Act;
(b) An order directing Defendant to offer Plaintiff reinstatement to his former managerial position covering all of North America;
(c) An award of compensatory damages, including damages for past and future emotional distress, pain and suffering, mental anguish, humiliation, anxiety, inconvenience, and damage to professional reputation, in an amount to be determined at trial, pursuant to the Americans with Disabilities Act and the Family and Medical Leave Act;
(d) An award of punitive damages against Defendants for their malicious, willful, wanton, reckless, and/or consciously indifferent disregard for Plaintiff's protected rights, in an amount to be determined at trial, pursuant to the Americans with Disabilities Act and the Family and Medical Leave Act;
(e) An order directing Defendants to implement policies, practices, and programs providing equal employment opportunities for all employees regardless of disability

status and FMLA status; which prevent retaliation, including mandatory training for all supervisors, managers, and HR personnel on their obligations under federal anti-discrimination, anti-retaliation laws;

(f) An award of Plaintiff's reasonable attorneys' fees, expert witness fees, and costs incurred in connection with this action, pursuant to Americans with Disabilities Act and the Family and Medical Leave Act; and

(g) Such other and further relief as this Court deems just and proper.

**WILLIAM GREY LAW OFFICE PLLLC**

Attorney for Plaintiff

By: *William Grey*
William Grey
430 Park Place, Floor 19
New York, NY 10022
William@WilliamGreyLawOffice.com
(929) 558-5565